UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

KIM L. LEWIS,

                                      Plaintiff,                               19-CV-197Sr

v.

COMMISSIONER OF SOCIAL SECURITY,

                                      Defendant.

---

## **DECISION AND ORDER**

As set forth In the Standing Order of the Court regarding Social Security Cases subject to the May 21, 2018 Memorandum of Understanding, the parties have consented to the assignment of this case to the undersigned to conduct all proceedings in this case, including the entry of final judgment, as set forth in 42 U.S.C. § 405(g). Dkt. #11.

## **BACKGROUND**

Plaintiff applied for disability insurance benefits with the Social Security Administration ("SSA"), alleging disability as of July 31, 2014, at the age of 53, due to a neck injury, back and hip pain, and depression. Dkt. #7, pp.49 & 70.

On July 10, 2017, plaintiff, represented by counsel, appeared and testified, along with an impartial vocational expert ("VE"), Donna Bardsley, at an administrative

hearing before Administrative Law Judge ("ALJ"), Roxanne Fuller. Dkt. #7, pp.46-69. Plaintiff testified that she has an Associate's degree in substance abuse and mental health counseling. Dkt. #7, p.50. Plaintiff had cervical fusion in 2005 following a car accident, has herniated discs in her lower back and received shots in her hips to alleviate pain. Dkt. #7, pp.54 & 59. She became addicted to the Lortab prescribed for pain and is currently receiving Suboxone treatment and taking Naproxen. Dkt. #7, pp.55-56. She has difficulty sitting for more than 30-45 minutes, standing for more than 15 minutes or walking more than a half of a block. Dkt. #7, pp.53-54 & 62-63. She is contemplating another cervical surgery because the pain has gotten worse. Dkt. #7, p.60. Plaintiff began treating with Dr. Stephen on July 31, 2014, her amended alleged onset of disability date, because she was having a hard time holding items such as a pen, glasses or a cup of coffee and was experiencing difficulty typing. Dkt. #7, pp.51, 54-55 & 60. She underwent carpal tunnel release on her dominant right hand in November, 2015 and was in the process of undergoing left carpal tunnel release. Dkt. #7, pp.51-52. She testified that her right hand was still sore and her left hand was worse. Dkt. #7, p.52. She has no strength in her hands and can only push or pull a little bit and lift about 5 pounds. Dkt. #7, pp.55 & 62.[1] She was prescribed Lyrica for aches and pains throughout her body, but insurance wouldn't cover it. Dkt. #7, p.55. She underwent bunion surgery on both feet and was still having problems walking. Dkt. #7, p.57. She uses an inhaler and oxygen machine for COPD. Dkt. #7, p.58. She is unable to sleep more than 2-3 hours per night and often sleepwalks. Dkt. #7, p.59.

---

[1] In a Function Report dated July 10, 2015, plaintiff indicated that she can't button or zip her clothing and that it is hard to lift her arm. Dkt. #7, p.193.

The VE testified that plaintiff's past relevant work as a substance abuse counselor and case worker constituted skilled, sedentary[2] positions. Dkt. #7, pp.67-68. The VE further testified that an individual with plaintiff's age, education and work experience, who was able to work at the light[3] exertion level, with occasional climbing of ramps, stairs, ladders, ropes and scaffolds; occasional balancing, stooping, crouching, kneeling and crawling; occasional exposure to extreme cold and heat, chemicals, poorly ventilated areas and irritants such as fumes, odors, dust and gases; and frequent gross and fine manipulation with both hands would be able to perform plaintiff's past relevant work as a substance abuse counselor or case worker. Dkt. #7, pp.64-65. The VE testified that such an individual could also work as an information clerk, rental clerk and officer helper, each of which were unskilled, light exertion positions. Dkt. #7, p.65. The VE further testified that plaintiff could perform her past relevant work and aforementioned jobs even if she was limited to sedentary work and the above

---

[2] Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.
20 C.F.R. § 404.1567(a).

[3] Light work involves lifting no more than 20 pounds at a time and occasionally lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of dexterity or inability to sit for long periods of time.
20 C.F.R. § 404.1567(b).

mentioned non-exertional limitations with an additional restriction to occasional handling and fingering with the left, non-dominant hand. Dkt. #7, p.65. The VE clarified that plaintiff's past relevant work only required occasional reaching, handling and fingering. Dkt. #7, p.67.

The ALJ rendered a decision that plaintiff was not disabled on October 18, 2017. Dkt. #7, pp.10-29. The Appeals Council denied review on December 20, 2018. Dkt. #7, p.4. Plaintiff commenced this action seeking review of the Commissioner's final decision on February 13, 2019. Dkt. #1.

## DISCUSSION AND ANALYSIS

"In reviewing a final decision of the SSA, this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012). Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 496, 501 (2d Cir. 2009). If the evidence is susceptible to more than one rational interpretation, the Commissioner's determination must be upheld. *McIntyre v. Colvin*, 758 F.3d 146, 149 (2d Cir. 2014). "Where an administrative decision rests on adequate findings sustained by evidence having rational probative force, the court should not substitute its judgment for that of the Commissioner." *Yancey v. Apfel*, 145 F.3d 106, 111 (2d Cir. 1998).

To be disabled under the Social Security Act ("Act"), a claimant must establish an inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 20 C.F.R. § 404.1505(a). The Commissioner must follow a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act. 20 C.F.R. § 404.1520(a). At step one, the claimant must demonstrate that he is not engaging in substantial gainful activity. 20 C.F.R. § 404.1520(b). At step two, the claimant must demonstrate that he has a severe impairment or combination of impairments that limits the claimant's ability to perform physical or mental work-related activities. 20 C.F.R. § 404.1520(c). If the impairment meets or medically equals the criteria of a disabling impairment as set forth in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"), and satisfies the durational requirement, the claimant is entitled to disability benefits. 20 C.F.R. § 404.1520(d). If the impairment does not meet the criteria of a disabling impairment, the Commissioner considers whether the claimant has sufficient RFC for the claimant to return to past relevant work. 20 C.F.R. § 404.1520(e)-(f). If the claimant is unable to return to past relevant work, the burden of proof shifts to the Commissioner to demonstrate that the claimant could perform other jobs which exist in significant numbers in the national economy, based on claimant's age, education and work experience. 20 C.F.R. § 404.1520(g).

In the instant case, the ALJ made the following findings with regard to the five-step sequential evaluation: (1) plaintiff had not engaged in substantial gainful

-5-

activity between the amended alleged onset date of July 31, 2014 and March 31, 2015, her date last insured; (2) plaintiff's degenerative disc disease of the cervical spine, lumbago, obesity, right hip osteoarthritis, COPD and carpal tunnel syndrome constitute severe impairments; (3) plaintiff's impairments did not meet or equal any listed impairment; (4) plaintiff retained the residual functional capacity to perform light work and can occasionally climb ramps, stairs, ladders, ropes or scaffolds, occasionally balance, stoop, crouch, kneel and crawl, frequently perform fine manipulation with both hands, and can withstand occasional exposure to extreme cold and heat, irritants such as fumes, odors, dusts and gases, poorly ventilated areas and chemicals; and (5) plaintiff was capable of performing her past work as a caseworker and substance abuse counselor, each of which were sedentary, skilled positions, or as an information clerk, rental clerk and office helper, and was not, therefore, disabled within the meaning of the SSA. Dkt. #7, pp.15-29.

Plaintiff argues that the ALJ crafted plaintiff's RFC without sufficient medical source opinion and improperly substituted her lay opinion for that of the only medical source opinion in the record. Dkt. #8-1, pp.7-8. More specifically, plaintiff argues that it was improper for the ALJ to determine that plaintiff's x-ray and MRI results were inconsistent with Dr. Stephen's opinion. Dkt. #8-1, p.10.

The Commissioner responds that the ALJ properly weighed Dr. Stephen's medical source opinion in crafting plaintiff's RFC in accordance with the medical evidence of record relevant to the time period at issue. Dkt. #9-1, p.15. Specifically, the

Commissioner argues that the ALJ correctly determined that the severe limitations set forth in Dr. Stephens' opinion were unsupported by the medical evidence of record. Dkt. #9-1, p.15. The Commissioner argues that substantial evidence supports the ALJ's determination that plaintiff was capable of substantial gainful activity. Dkt. 9-1, p.18.

On April 16, 2015, James Stephen, M.D., completed a Medical Examination for Employability Assessment Disability Screening and Alcoholism Drug Addiction form for the New York State Office of Temporary and Disability Assistance. Dkt. #7, p.273. Dr. Stephen opined that plaintiff was currently 100% disabled due to carpal tunnel syndrome, which could be expected to last 4-6 months, and neck and arm pain, which was permanent. Dkt. #7, p.273. Dr. Stephen indicated that plaintiff was moderately limited in her ability to walk, stand, sit and climb and very limited in her ability to lift, carry, push, pull, bend or use her hands. Dkt. #7, p.274.

> The ALJ agreed with Dr. Stephen
>
> that the medical evidence, which documents the claimant's history of cervical and lumbar back pain, as well as bilateral CTS, warrants some functional restrictions, such as to postural activities and manipulative limitations. However, the evidence does not support the severe limitations proposed by Dr. Stpehen, and does not support a finding that the claimant is "100% disabled." Accordingly, as his opinion ventures into an area reserved to the Commissioner, and is overly severe, I must only provide his assessment partial weight, to the extent that his suggested restrictions are consistent with the objective medical record.

Dkt. #7, p.25. As to plaintiff's musculoskeletal impairments, the ALJ found nothing within the evidence prior to the date last insured to establish the level of severe

impairment alleged by plaintiff, noting that objective imaging of the cervical spine during the relevant time period did not suggest any significant additional degeneration and even the most recent medical records only demonstrated some additional mild degeneration of her cervical spine. Dkt. #7, p.26. With respect to her carpal tunnel syndrome, the ALJ noted that the medical record indicated only minor evidence of carpal tunnel syndrome, with no evidence of gross manipulative difficulties and improved symptoms immediately following carpal tunnel release on the right hand. Dkt. #7, p.26. The ALJ determined that restricting plaintiff to light work, with additional postural and manipulative limitations, was more than sufficient to address plaintiff's impairments. Dkt. #7, p.26.

The ultimate question of disability is reserved for the Commissioner. *Snell v. Apfel*, 177 F.3d 128, 133-134 (2d Cir. 1999). Thus, it is the responsibility of the ALJ to weigh all of the evidence available to make an RFC determination that is consistent with the record as a whole. *Matta v. Astrue*, 508 Fed. App'x 53, 56 (2d Cir. 2013). Because an ALJ is not a medical professional, however, an ALJ is generally not qualified to assess a plaintiff's capacity for work on the basis of bare medical findings. *Williams v. Comm'r of Soc. Sec.*, 366 F. Supp.3d 411, 416 (W.D.N.Y. 2019). Stated another way, an ALJ may not translate raw medical data into functional assessments. *Gulczewski v. Comm's of Soc. Sec'y*, __ F. Supp.3d __, 2020 WL 2846948, at *4 (W.D.N.Y. 2020). More specifically, the ALJ may not rely on the medical record in determining the plaintiff's RFC where the medical record discusses a plaintiff's

impairments, symptoms and treatment, but does not shed light on the plaintiff's limitations. *Johnson v. Comm'r of Soc. Sec'y*, 351 F. Supp.3d 286, 293 (W.D.N.Y. 2018); *See Guttierez v. Berryhill*, 333 F. Supp.3d 267, 271 (W.D.N.Y. 2018) (where findings in the record merely diagnose the plaintiff's exertional impairments without relating such diagnoses to specific residual functional capacities, the general rule is that the ALJ may not make the connection on his or her own). District courts have recognized a limited exception to this rule, permitting an ALJ to use common sense judgment about functional capacity without a physician's assessment only when the medical evidence reveals minor physical impairments. *Williams,* 366 F.Supp.3d at 417-418. Where the ALJ identifies severe impairments for which plaintiff received significant treatment, however, a medical opinion addressing plaintiff's functional limitations is required. *Id.* at 418. An ALJ's determination of a plaintiff's RFC in the absence of such a medical source assessment is not supported by substantial evidence. *Id.* at 416.

In the instant case, the ALJ's determination to afford Dr. Stephen's opinion less than controlling weight is supported by substantial evidence. At the time of his assessment on April 16, 2015, Dr. Stephen had examined plaintiff four times: (1) July 31, 2014 when she reported that she felt fine and had no active complaints (Dkt. #7, p.285); (2) September 15, 2014 when she presented with a respiratory virus (Dkt. #7, p.282); (3) January 22, 2015 when she was diagnosed with bronchitis (Dkt. #7, p.279); and (4) April 16, 2015 when she presented with complaints of bilateral pain in her hands and aching in all her muscles all the time. Dkt. #7, p.276. On this last visit,

Dr. Stephen observed decreased sensation in both palms and 4/5 strength in both hands and referred plaintiff to a hand surgeon. Dkt. #7, p.277. Such limited findings do not support the level of functional impairment indicated by Dr. Stephen in his medical source statement. As the ALJ recognized, however, plaintiff has been diagnosed with and received treatment for, *inter alia*, degenerative disease of the cervical spine (Dkt. #7, p.413, 452, 542, 558), right hip osteoarthritis (Dkt. #7, p.251), COPD (Dkt. #7, pp. 469, 350-367, 456, 479, 482, 488-489), and bilateral carpal tunnel syndrome. Dkt. #7, p.270. While much of this evidence is beyond plaintiff's last insured date, the Court of Appeals has observed that evidence bearing upon a plaintiff's condition subsequent to the date upon which the plaintiff's insured date was last met is pertinent evidence which may disclose the severity and continuity of impairments existing before that date or may identify additional impairments which could reasonably be presumed to have been present and to have imposed limitations as of the date of last insured. *Lisa v. Sec'y of Dep't of Health & Human Servs.*, 940 F.2d 40, 44 (2d Cir. 1991); *See Bettis v. Chater*, No. 94 CV 1521, 1996 WL 19214, at * 3 (Jan. 11, 1996) (noting that medical evidence subsequent to the eligibility cut-off date may be relevant to disclose the severity and continuity of impairments existing before that date).

Assessment of the severity of plaintiff's impairments and the impact of such a combination of impairments upon plaintiff's RFC during the time frame at issue in this action requires more than a common sense judgment; it requires competent medical opinion. *See Gulczewski*, 2020 WL 2846948, at * 4 (multiple severe

impairments, including degenerative disc disease of such severity as to require surgery, warranted medical opinion assessing plaintiff's functional impairments); *Johnson*, 351 F. Supp.3d at 294 (medical opinion addressing plaintiff's physical functional limitations required where plaintiff received significant treatment for ongoing knee pain); *Pryn v. Berryhill*, 16-CV-315, 2017 WL 1546479, at * 4 (W.D.N.Y. 2017) (ALJ not permitted to render a common sense judgment regarding functional capacity from operative reports and treatment notes relating to coronary artery bypass surgery). In the absence of any such medical source opinion or functional assessment in the record to support the ALJ's determination of plaintiff's RFC, this matter is hereby remanded for further administrative proceedings. *See Bailey v. Comm'r of Soc. Sec'y,* 19-CV-6121, 2020 WL 4192248, at *6 (W.D.N.Y. July 21, 2020) (remand required where ALJ rejected only medical opinion of record and relied upon his own lay judgment in determining RFC of plaintiff with muscle pain); *Gipps v. Berryhill,* 17-CV-1171, 2019 WL 1986518, at *8 (W.D.N.Y. May 6, 2019) (remand required where ALJ dismissed medical source opinions, leaving no medical source opinion or functional assessment to support RFC determination of plaintiff with cervicalgia); *Martin v. Berryhill*, No. 16-CV-6184, 2017 WL 1313837, at * 3 (W.D.N.Y. Apr. 10, 2017)(remand required where ALJ rejected medical opinion, leaving no medical opinion regarding ability of plaintiff suffering from knee osteoarthritis and hip bursitis, to sit, stand, walk or lift).

## CONCLUSION

Based on the foregoing, plaintiff's motion for judgment on the pleadings (Dkt. #8), is granted in so far as plaintiff seeks remand and the Commissioner's motion for judgment on the pleadings (Dkt. #9), is denied.

The Clerk of the Court is directed to close this case.

**SO ORDERED.**

**DATED:**    **Buffalo, New York**
            **September 1, 2020**

　　　　　　　　　　　　　　　　　　　　  *s/ H. Kenneth Schroeder, Jr.*
　　　　　　　　　　　　　　　　　　　　  **H. KENNETH SCHROEDER, JR.**
　　　　　　　　　　　　　　　　　　　　  **United States Magistrate Judge**